MORRIS WERNER et al., Respondents, v. CAMIL-LUS FINLEY, Appellant.

Springfield Court of Appeals, June 6, 1910.

1. **CONTRACTS: Master and Servant: Liquidated Damages.** De-fendant had been employed by the plaintiff as salesman for one hundred and sixty weeks at a salary of $60 a week. The written contract for these services further provided that in case of a failure to perform on the part of the defendant, the contract should terminate and defendant should pay plaintiff the sum of $10 per week for the unexpired term as liquidated damages. After several months' service under this contract, defendant went to work for a rival firm under a contract that he had made four months prior to leaving plaintiff. *Held*, that the $10 per week could be recovered from defendant as liqui-dated damages.

2. **DAMAGES: Liquidated Damages: Penalty.** In order to find that the damages as fixed by the parties for a breach of con-tract are unreasonable, the court must be able to say that they are grossly and clearly disproportionate to the actual damages. The true question is whether, in view of the actual breach complained of, the sum nominated in the contract is to be fairly regarded as a penalty, or as a fair measure of the real damage in the estimation of the parties most familiar with the probable effects of its breach.

3. **CONTRACTS: Duty of Courts to Enforce.** Where men of equal standing and ability, and possessed of full knowledge of the situation and dealing with each other on terms of equality, provide as best they can against the contingencies and un-certainties of the future, there is no reason why they should not be permitted to make their own contracts and, when they are made, it is the province of a court of law to enforce them, not to alter them.

4. **DAMAGES: Contracts: Liquidated Damages: Liability Depends on Substantial Breach of Contract.** Before any liability to pay liquidated damages can attach to the party in default, he must have been guilty of a substantial breach of his agreement, a breach which has resulted in more than mere nominal damages to the other party.

5. **————: ————: ————: Breach of Trivial Covenants.** The law does not declare that because a contract contains several covenants, some important and some trivial, and which attaches the same penalty to a breach of any one of them, that such a contract is therefore void. Such fact is merely one of the facts to be considered in reaching the true intent of the parties.

6. **MASTER AND SERVANT: Breach of Contract of Service: Pleading: Practice: Affirmative Defense.** In a suit for damages by an employer for breach of a contract of service on the part of the employee the defendant offered evidence to show that the employer had made his position unbearable. This was excluded. *Held,* not error: first, because no exception was taken to the action of the trial court in excluding the evidence; second, the evidence showed that defendant had contracted his services to another before his condition became unbearable as he claimed; and third, this defense was not set up in the answer and, being an affirmative defense, should have been pleaded.

7. **————: ————: Servant on Breach not Entitled to Re-Employment.** Where defendant, employed by plaintiff for a term of years under a contract, violated the contract and left the service of his employer, and the contract provided for the payment of a sum as liquidated damages in case of such a breach, the liability of the defendant attached upon the breach of the contract and, under the terms of the contract, plaintiff was not required to furnish him with further employment.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Lyon & Swarts* for appellant.

(1) Giving due regard to the situation of the parties, the subject-matter of the contract, the object sought by it to be accomplished, the gross excessive-

ness and disproportion of the amount claimed to the injury sustained, the contract here involved should be construed as stipulating for a penalty, notwithstanding that the parties themselves call the damages liquidated. Bayse v. Ambrose, 28 Mo. 39; Hammer v. Breidenbach, 31 Mo. 49; Jewelry Co. v. O'Brien, 70 Mo. App. 432; McCaull v. Braham, 16 Fed. 37. (2) Because the contract contains many distinct covenants on the part of the defendant, attempting to secure by him the performance or omission to perform of many various acts and things, some of the most trivial kind, a breach of any one of which no matter how trifling involves a visitation of the same penalty, such contract will be construed by the court as involving a penalty. Bayse v. Ambrose, 28 Mo. 39; Morse v. Rathburn, 42 Mo. 594; Tinkham v. Sartori, 44 Mo. App. 659; Wilhelm v. Eaves, 21 Ore. 194; Fruit Co. v. Bond, 26 Fed. 18.

*Karl M. Vetsburg* and *David Goldsmith* for respondents.

(1) Giving due regard to the language of the contract, the intention of the parties as gathered from all its provisions, the subject of the contract and its surroundings, the ease or difficulty of measuring the damages in breach and the sum stipulated, the contract in suit was properly considered by the trial court as one for liquidated damages, and not for a penalty. May v. Crawford, 142 Mo. 390, 150 Mo. 504; Sun v. Moore, 183 U. S. 642; Glynn v. Moran, 174 Mass. 233; Keeble v. Keeble, 85 Ala. 552; Walsh v. Douglas, 102 Wis. 172; Richardson v. Woehler, 26 Mich. 90. (2) It is not the law of this State, merely because a contract contains several covenants, some important and some trivial, a breach of any of which involves the same amount of damage, such contract will be construed as involving a penalty, but that fact is merely one of the facts to be considered in reaching the true intent of the parties. May v. Crawford, 142 Mo. 390, 150 Mo. 504.

STATEMENT.—On the 20th day of November, 1905, appellant and respondents entered into a contract in writing by the terms of which appellant agreed to serve respondents, and respondents agreed to employ appellant as a salesman in its retail clothing and furnishing goods store in St. Louis, Missouri, for a period of one hundred and sixty weeks at a salary of sixty dollars per week. The contract, among other things, provided that in case appellant should fail or refuse to perform any of the covenants on his part to be performed, the respondents should have the right to terminate the contract, and, on such termination, should receive from the appellant, and appellant agreed to pay respondents, as liquidated damages, the sum of ten dollars per week for the unexpired period of the contract. Appellant entered the employ of the respondents under the contract, and remained there until the 10th day of September, 1906, when, without notification, he left the employ of the respondents. Thereupon, to-wit, on the 28th day of September, 1906, this suit was filed to recover of the appellant the sum of $1180, being ten dollars per week for the period of one hundred and eighteen weeks, as provided by the contract.

The evidence adduced at the trial, in addition to the foregoing, showed that immediately after quitting the employ of respondents, to-wit, on the 10th day of September, 1906, the appellant entered the employ of the Werner & Werner Clothing and Furnishing Goods Company, a rival corporation in St. Louis, Missouri, engaged in the same line of business but having no connection with the respondents. That appellant's employment with the latter company was under a written contract executed the second day of May, 1906, or four months prior to his quitting the employ of the respondents. This new contract called for his services for a period of three years from September 1, 1906. It thus appears that he left the service of respondents to carry

out this contract made with the other firm four months prior to his quitting.

The defense was two-fold: First, that the contract was one for a penalty; and, secondly, that at the time suit was filed, the cause of action was not the property of the respondents, but had, prior thereto, been transferred to a corporation known as Werner Bros. Mercantile Company.

On the question of transfer, the defendant introduced the articles of association of the Werner Bros. Mercantile Company, which said articles were dated September 10, 1906, and which stated that the capital stock of the corporation was paid up. Mr. Simon Werner, one of the respondents, testified that while it was intended to pay up the capital stock with the assets of the partnership, the said assets had not been transferred at said time; that the assets of the partnership remained the property of the firm until October 25, 1906; that on that date, they were acquired by the corporation, Werner Bros. Mercantile Company; that on that date a meeting of the shareholders of the corporation was held, at which said meeting a resolution was adopted by the shareholders providing for the purchase of said assets; that a record of said meeting was kept in writing and signed by all the shareholders; that prior to said meeting said corporation had no property at all; that prior to October 25th, the said corporation did not acquire the property of said partnership; that said partnership continued in business in its own name until that date, and that prior thereto no change was made in its partnership business or in its books, but that on October 25th the transfer was made and the corporation began business. In connection with Mr. Werner's testimony, the plaintiffs offered in evidence the minutes of the said meeting showing that the transfer was authorized and the purchase made on October 25, 1906, and also offered in evidence numerous insurance policies insuring the merchandise of the firm of Werner

Bros. against loss by fire, every one of which showed by written indorsements that it was transferred by the firm of Werner Bros. to said corporation on October 25, 1906, with the consent of the insurance companies issuing the policies.

On this showing the trial court held that there was no evidence of any transfer prior to the filing of this suit, and that the contract was one for liquidated damages, and the court accordingly instructed the jury to find for the plaintiff in the sum of $1180, in accordance with which instruction verdict was rendered and judgment given in favor of plaintiffs for said amount, from which judgment this appeal has been prosecuted by the defendant.

NIXON, P. J.—I. Appellant has assigned as error that the stipulation or contract for services sued upon should not be held to be one for liquidated damages because the damages fixed in said contract are unreasonable and the real damages easily ascertainable.

We find that, all the circumstances considered, the damages are not unreasonable; nor are the real damages easily ascertainable. To say that the damages are unreasonable, the court must be able to say that they are grossly and clearly disproportionate to the actual damage. It is quite evident that this cannot be done in the present case. Here, an unusually large salary— sixty dollars per week—was paid a salesman. It is quite apparent that the sixty dollars was not compensation for ordinary services. The fact that the contract was made for one hundred and sixty weeks, or over three years, also clearly indicates that the plaintiffs attached considerable weight and importance to the services of the defendant and were willing to pay liberally for them.

So far as the ascertainment of the actual damages is concerned, it must be evident that that would be a

matter of extreme difficulty. The damage would consist in the excess of the value of his services to the employer over the contract price, and the injury to the business if a competent man could not be found to fill his place. If he received greater compensation after the termination of the contract, that would be one consideration, but he might not take new employment, or for the time being intentionally contract for less wages than he could get. Moreover, that would not be the only consideration. The loss of patronage which might follow the withdrawal of appellant from the business, the need of the old establishment for his services, the peculiar value of his services arising therefrom, the harm that he could do by entering the employ of a rival concern, all these are elements which should be considered, either as a matter of course, or because they were within the contemplation of the parties, it being clear that damages within the contemplation of the parties as a result of the breach of the contract may be recovered for the breach. The further provision in the contract by which the appellant agreed to not even solicit employment with any other concern during the term of this contract shows the importance attached by the parties to his services.

Giving due regard to the language of the contract, the intention of the parties as gathered from the contract provisions, the subject of the contract and its surroundings, the difficulty of measuring the damages for its breach, and the sum stipulated, the contract in suit was properly considered by the trial court as one for liquidated damages, and not for a penalty. "The true question is whether, in view of the actual breach complained of, the sum nominated in the contract is to be fairly regarded as a penalty, or as a fair measure of the real damage in the estimation of the parties most familiar with the probable effects of its breach." [May v. Crawford, 142 Mo. 390, 402, 44 S. W. 250.] Cer-

Werner v. Finley.

tainly, the contract states as clearly as words can, that it was the intention of the parties that this should be a contract for liquidated damages. There is no ambiguity about it; there was no fraud, no unfair or improper dealings. It is a clear case of business men of equal standing and ability and possessed of full knowledge of the situation dealing with each other on terms of equality, providing as best they could against the contingencies and uncertainties of the future. Under such circumstances, there is no reason why they should not be permitted to make their own contracts; and when they are so made, it is the province of a court of law to enforce them, not to alter them. [May v. Crawford, supra; May v. Crawford, 150 Mo. 504, 51 S. W. 693; Sun v. Moore, 183 U. S. 642; Glynn v. Moran, 174 Mass. 233; Keeble v. Keeble, 85 Ala. 552; Walsh v. Douglas, 102 Wis. 174; Richardson v. Woehler, 26 Mich. 90; Clement v. Cash, 21 N. Y. 253.]

II. It is contended that the contract sued upon involved several covenants, and that the covenant for liquidated damages, being applicable to all these covenants alike, such a contract will not be enforced by the court. The breach here assigned for which action was brought was in respect to matters which were regarded by the parties as of sufficient magnitude to be enumerated and guarded against. The law undoubtedly is that before any liability to pay liquidated damages can attach to the party in default, he must have been guilty of a substantial breach of his agreement, a breach which has resulted in more than mere nominal damage to the other party. "This rule is so manifestly just that no discussion of it is necessary." [Hathaway v. Lynn, 6 L. R. A. l. c. 553.]

But the law does not declare that because a contract contains several covenants, some important and some trivial, and which attaches the same penalty to

a breach of any one of them, such contract is therefore void. Such fact is merely one of the facts to be considered in reaching the true intent of the parties. The stipulation for liquidated damages in the contract in question is attached to one provision only; that provision is that respondents might terminate such contract and that the damages should attach to such termination. The covenant breached by the appellant was not a trivial or insignificant one, but of the greatest importance, as it concerned the most vital provision of the whole contract. The appellant entered into the contract sued on in November, 1905. In May, 1906, he secretly entered into another contract with another concern by which he agreed that his services should commence under the latter contract the following September; and in the following September, he left the employ of the respondents to keep the latter contract, concealing the true reason and assigning as a pretext an alleged disturbance at his home on the night previous (with whom he does not say, nor does it appear that the plaintiffs had any connection therewith, nor even that there was any foundation for the pretense). This was not only a willful breach, but also one for which there is no palliation of excuse.

III. Appellant further assigns as error the refusal of the trial court to admit evidence to the effect that his position with the respondents was unbearable, contending that the contract implies an undertaking on the part of the respondents to so conduct themselves as to not make his position unbearable.

It is to be noted in this regard that there was no exception taken to the exclusion of this evidence at the time it was offered. This is fatal. It is also shown that appellant had contracted his services to another party before his position became unbearable as he claimed. Hence the evidence was immaterial as the trial court properly held. And, it might be suggested that the

evidence excluded did not tend to prove any issue raised by the appellant's answer. This was an affirmative defense, which, if relied on, should have been specially pleaded. [Hammer v. Breidenbach, 31 Mo. 49.]

IV. Appellant insists that the cause of action sued upon by respondents had been assigned to the corporation, Werner Bros. Mercantile Company, and consequently the respondents could not maintain the action.

The evidence does not justify this contention. This suit was commenced on the 10th day of October, 1906. The assets of the partnership of Werner Bros. remained the property of that firm until October 25, 1906, so that at the time this action was commenced, Werner Bros. Mercantile Company, the corporation, did not own the claim of Werner Bros., the partnership, against this appellant. Besides this, the evidence fails to show that this claim was ever assigned to the corporation. While it is true that there is evidence of an intention to transfer the assets of the partnership in order to pay up the capital stock of the corporation, there is no evidence that such intention to transfer was actually consummated and consequently no evidence that the legal title to the present claim was ever vested in such corporation.

V. Appellant further claims that respondents ought not recover because the corporation in which respondents became stockholders never offered the appellant employment as a salesman.

The record shows that the defendant himself testified that when he left Werner Bros., he went at once to the Werner & Werner Clothing and Furnishing Goods Company under his contract of May 2, 1906, and that he thereafter remained in the employ of that company. And it was further admitted by all parties that appellant left the employ of respondents on September 9th

or 10th, 1906, and never thereafter returned. The contract of the appellant being breached while the appellant was in the employ of the plaintiff partnership, the cause of action accrued at that time and nothing more was needed to complete it. By terminating the contract contrary to its terms, the appellant became indebted to the respondents in the sum of ten dollars for each and every week of the unexpired time of the period for which the contract was to run, that is to say, ten dollars for each week between the date of such termination and the date of the expiration of the aforesaid one hundred and sixty weeks for which the contract was made. The terms of the contract did not contemplate that after he had violated its terms and been discharged for misconduct, that he might return and re-enter the employ of the partnership, or that the respondents, in such contingency, if he desired, were to furnish him with further employment.

Finding no error in the trial of the case, the judgment is affirmed. All concur.